UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:
Douglas E. Andrus,   Case No. 05-86582
                    Chapter 7
        Debtor.   Hon. Phillip J. Shefferly
_____/
Douglas E. Andrus,

        Plaintiff,

vs   Adversary Case No. 05-5863

Nancy Ann Ajemian,

        Defendant.
_____/

**OPINION DENYING (1) DEFENDANT'S MOTION TO DISMISS;
(2) DEFENDANT'S MOTION TO ABSTAIN; AND
(3) DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND
GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

I. Introduction

Douglas Andrus is the Debtor in this Chapter 7 case. The Debtor filed this adversary proceeding seeking a determination that a debt of $146,184.04 owed by him to his former spouse, Defendant, Nancy Ajemian, is a dischargeable debt. Ajemian filed a motion to dismiss the Debtor's complaint or, alternatively, to abstain, a counter-complaint seeking a determination that the debt is non-dischargeable and a motion for summary judgment. The Debtor then filed his own motion for summary judgment. The Court held a hearing on Ajemian's three motions and the Debtor's motion on February 9, 2006. For the reasons set forth in this opinion, the Court denies Ajemian's motions and grants the Debtor's motion for summary judgment.

II. Facts

The following are the undisputed facts in this case. The Debtor and Ajemian were married

for nine years. On April 1, 2003, Ajemian filed a complaint for divorce in Wayne County Circuit Court. The Debtor and Ajemian attended a binding arbitration within that case before John Foley. At the conclusion of the arbitration, the arbitrator made an award and a judgment of divorce after binding arbitration was entered by the Wayne County Circuit Court on July 20, 2005 ("Judgment"). Ajemian and her attorney approved the Judgment for entry by the Wayne County Circuit Court. It was not approved for entry by the Debtor and his attorney. After the court entered the Judgment, the Debtor filed an appeal of the Judgment with the Michigan Court of Appeals. That appeal is still pending.

On October 15, 2005, the Debtor filed a Chapter 7 petition. On November 12, 2005, the Debtor filed this adversary proceeding seeking a determination that the indebtedness owing by him to Ajemian under the Judgment is a dischargeable debt and not within the exception to discharge set forth in § 523(a)(5).[1] Ajemian filed a motion to dismiss the complaint and a motion requesting the Court to abstain from determining whether the debt owed by the Debtor to Ajemian is non-dischargeable. In addition, Ajemian filed a counter-complaint requesting in the alternative that, if this Court should find that the debt is not a non-dischargeable debt within § 523(a)(5), the Court then determine that it is a non-dischargeable debt within § 523(a)(15).

III. Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

---

[1] All references to the Bankruptcy Code in this opinion are to the Bankruptcy Code as it existed prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. This is because the Debtor filed his chapter 7 case prior to October 17, 2005, the effective date of that Act.

IV. <u>Analysis</u>

A.      Ajemian's Motion to Dismiss

Ajemian moves for dismissal under Fed. R. Civ. P. 12(b)(6).  Ajemian did not specifically apply Rule 12(b)(6) in her motion to dismiss or brief in support.  She incorrectly assumed that matters outside the complaint were presented to the Court.  Under Rule 12(b), if a motion for dismissal of a pleading for failure to state a claim upon which relief may be granted presents "matters outside the pleading[,] . . . the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . ."  Fed. R. Civ. P. 12(b).  The only "matter" that Ajemian points to is the Judgment.  However, the Debtor's complaint included a copy of the Judgment.  Therefore, Ajemian's motion to dismiss is not automatically treated as a motion for summary judgment.

Rule 12(b) is made applicable to adversary proceedings by Fed. R. Bankr. P. 7012(b).  In deciding a motion to dismiss for failure to state a claim,

> [t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief.  A court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations.

<u>Bovee v. Coopers & Lybrand C.P.A.</u>, 272 F.3d 356, 360 (6th Cir. 2001) (citations omitted).  "The standard of review require[s] more than the bare assertion of legal conclusions. . . . [The] Court need not accept as true legal conclusions or unwarranted factual inferences."  <u>Id.</u> at 361 (internal quotation marks and citations omitted).  "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all the material elements of the claim."  <u>Wittstock v. Mark A. Van Sile, Inc.</u>, 330 F.3d 899, 902 (6th Cir. 2003).  "A motion to dismiss under Rule 12(b)(6) should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  <u>Beztak Land Co. v. City of</u>

Detroit, 298 F.3d 559, 565 (6th Cir. 2002) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

In this case, the Debtor's complaint contains all the material factual and legal allegations necessary to substantiate his claim that the debt is a dischargeable debt and not within § 523(a)(5) of the Bankruptcy Code, and is supported by a copy of the Judgment on which he relies. Accordingly, Ajemian's motion to dismiss for failure to state a claim is denied.

B.   Ajemian's Motion for Abstention

Ajemian next asks that this Court abstain from hearing this matter. Ajemian relies on 11 U.S.C. § 305(a)(1) and 28 U.S.C. § 1334(c)(1) and (2).

Section 305(a)(1) of the Bankruptcy Code provides that the Court "may dismiss *a case* under this title or may suspend *all proceedings in a case* under this title, at any time if [ ] the interests of creditors and the debtor would be better served by such dismissal or suspension . . . ." 11 U.S.C. § 305(a)(1) (emphasis added). By its terms, § 305(a) applies to entire cases or all proceedings in a case, not particular proceedings in a case, such as this adversary proceeding.

> In general, section 305 of the Bankruptcy Code grants significant discretion to the bankruptcy courts to decline, in certain circumstances, to exercise jurisdiction over a case filed under title 11. . . . Its narrow breadth is consistent with congressional intent to prevent the commencement and continuation of disruptive involuntary cases . . . . Under 28 U.S.C. § 1334(c)(1), the court may, in the interest of justice, abstain "from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." If a party wishes the bankruptcy court to abstain from a particular adversary proceeding, section 1334(c) is the proper vehicle; if it seeks suspension of all proceedings within a case, section 305(a) should be invoked.

2 Collier on Bankruptcy ¶ 305.01[1] (15th ed. rev. 2005) (quoting 28 U.S.C. § 1334(c)(1)) (footnotes omitted).

As an alternate basis, Ajemian cites to both §§ 1334(c)(1) and (c)(2). As noted, this is a core proceeding. The mandatory abstention provision of § 1334(c)(2), which applies only to related

-4-

05-05863-pjs    Doc 21    Filed 03/14/06    Entered 03/14/06 09:59:12    Page 4 of 13

proceedings, does not apply. As a core proceeding to determine dischargeability, the permissive abstention provision of § 1334(c)(1) is applicable. In analyzing whether the "the interest of justice, or in the interest of comity with State courts or respect for State law" support abstention,

> [c]ourts have listed the following non-exclusive factors as relevant: (1) the effect or lack of effect on the efficient administration of the estate if a court abstains; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of this court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of nondebtor parties; and (13) any unusual or other significant factors.

Kmart Creditor Trust v. Conway (In re Kmart Corp.), 307 B.R. 586, 596-97 (Bankr. E.D. Mich. 2004) (J. McIvor) (citations omitted).

The predominance of state law issues, the lack of jurisdiction other than under 28 U.S.C. § 1334, and the presence of Ajemian as a non-debtor party, all weigh in Ajemian's favor. However, the balance of the factors either weigh against her or are neutral. A significant factor, in the Court's view, is the fact that Ajemian included a count under § 523(a)(15) in her counter-complaint. The bankruptcy court has exclusive jurisdiction over such actions. Abstention by the Court over the § 523(a)(5) claim would necessarily bifurcate the determination of dischargeability between state court and bankruptcy court.[2]

---

[2] There is a related proceeding in state court. The Debtor's appeal is currently before the Michigan Court of Appeals. However, according to the Debtor's counsel, the issue of non-dischargeability is not part of that appeal. Instead, the Debtor is challenging the arbitration on procedural grounds, and objecting to the admission of certain expert testimony at the arbitration hearing. The pendency of the appeal in state court does not weigh in favor of abstention or

After reviewing the factors for permissive abstention, the Court finds that there are not enough factors present in this case to lead the Court to conclude that it is in the best interest of justice or in the interest of comity with state courts that this Court abstain from hearing this adversary proceeding. The Court accordingly denies Ajemian's motion for abstention.

C.  Ajemian's and the Debtor's Motions for Summary Judgment Regarding the § 523(a)(5) Claim

Fed. R. Civ. P. 56(c) for summary judgment is incorporated into Fed. R. Bankr. P. 7056(c). Summary judgment is only appropriate when "'there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986) (quoting Fed. R. Civ. P. 56(c)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48. A "genuine" issue is present "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Berryman v. Reiger, 150 F.3d 561, 566 (6th Cir. 1998) (quoting Anderson, 447 U.S. at 248).

> [A]s with other nondischargeability provisions under § 523(a) of the Bankruptcy Code, the burden of proving the elements of the statute, by a preponderance of the evidence, is placed upon the party contesting the dischargeability of the debt. However, unlike the other nondischargeability provisions under § 523(a) which are construed narrowly, the nondischargeability provision of § 523(a)(5) is given a broad construction so as to promote the Congressional policy that favors enforcement of obligations for spousal and child support.

Luman v. Luman (In re Luman), 238 B.R. 697, 704 (Bankr. N.D. Ohio 1999) (citing in part Grogan v. Garner, 498 U.S. 279, 291 (1991); Long v. Calhoun (In re Calhoun), 715 F.2d 1103 (6th Cir.1983)) (other citations and footnote omitted). As the party challenging the dischargeability of

---

deprive this Court of jurisdiction to determine dischargeability.

the debt, Ajemian has the burden of proof. However, in proving her case, Ajemian benefits from the broad construction accorded to obligations for spousal support.

Both parties ask that the Court grant summary judgment in their favor under § 523(a)(5), which provides as follows:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . to a . . . former spouse . . . for alimony to, maintenance for, or support of such spouse . . . in connection with a . . . divorce decree . . . , but not to the extent that . . . such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support . . . .

11 U.S.C. § 523(a)(5)(B). In the Sixth Circuit, a trio of cases dating back to 1983 forms the basis for determining whether a debt "is actually in the nature of alimony, maintenance, or support." In Long v. Calhoun (In re Calhoun), 715 F.2d 1103 (6th Cir. 1983), the Sixth Circuit set forth a four-part test,

> focusing on (1) whether the parties intended to create an obligation to be in the nature of support, (2) whether the obligation in fact provides support, (3) whether the support award is unreasonable; and (4) if unreasonable, the amount of the debt to be discharged to carry out the policy of the bankruptcy code. Fitzgerald v. Fitzgerald (In re Fitzgerald), 9 F.3d 517 (6th Cir.1993) (citing Calhoun, 715 F.2d at 1109-10).
>
> Fitzgerald communicated a standard to be applied when an obligation is labeled as support. "Thus, Fitzgerald stands for the proposition that a state court's award of alimony is entitled to deference when labeled and structured as such." Sorah v. Sorah (In re Sorah), 163 F.3d 397, 401 (6th Cir.1998).
>
> The Sixth Circuit further expounded on the analysis in In re Sorah when it advised bankruptcy courts faced with a question whether an obligation is in the nature of support to review the obligation in light of "traditional indicia" of a support award, including
>
>> (1) a label such as alimony, support, or maintenance in the decree or agreement, (2) a direct payment to the former spouse, as opposed to the assumption of third-party debt, and (3) payments that are contingent upon such events as death, remarriage, or eligibility for Social Security benefits.

> Sorah v. Sorah (In re Sorah), 163 F.3d 397, 401 (6th Cir.1998). Sorah involved an award labeled "maintenance" by the state court but discharged by the bankruptcy court as not in the nature of support. Sorah reaffirmed the requirement that bankruptcy courts defer to state courts' decisions if awards appear to be in the nature of support. Stated differently, if an obligation is designated as support and has the indicia, the intent to create a support award is conclusively presumed and a bankruptcy court is not to challenge that intent by probing the award. The court did not provide an exhaustive list of indicia, instead deferring to state law. Sorah, 163 F.3d at 401.

Phelps v. Cordia (In re Cordia), 280 B.R. 138, 144 (Bankr. N.D. Ohio 2001) (footnotes omitted).

The application of Sorah requires examination of several provisions in the Judgment in this case. First, there is a separate section entitled "ALIMONY/SPOUSAL SUPPORT." (Compl., Ex. A at 2.) Any spousal support from Ajemian to the Debtor is "forever barred." (Id. at 2-3.) On the other hand, the Judgment orders

> that as a result of the arbitrator's decision, [the Debtor] owes [Ajemian] the sum of $146,181.04. That sum is to be paid to [Ajemian] by [the Debtor] in the form of nonmodifiable alimony over a period of sixty months from the date of entry of the judgment, equaling $2,436.35 per month. These alimony payments shall be nonmodifiable and nondischargeable in bankruptcy. Further, they shall have no tax consequences to either party.
>
> IT IS FURTHER ORDER AND ADJUDGED that [the Debtor] shall pay to [sic] directly to [Ajemian] $2,436.35 per month for a period of sixty months, at which time spousal support shall be forever barred. It is the intention of the parties that this spousal support obligation be nonmodifiable regarding amount and duration. The parties each waive all statutory rights granted by Michigan law to petition the court for modification of spousal support, and the spousal support provision set forth in this judgment is final, binding, and nonmodifiable.

(Id. at 3.)

Second, following the "ALIMONY/SPOUSAL SUPPORT" section is a section entitled "PROPERTY SETTLEMENT." (Id. at 4.) This provision allocates real property, pension and bank accounts, vehicles, and business assets. Ajemian is awarded the marital home and is to pay the Debtor $117,777 for his one-half interest in the home. (Id. at 4.) The "PROPERTY

SETTLEMENT" also awards certain credits to both parties for their interests in certain property. Ajemian is awarded a $229,194.04 credit for her interest in Prudential Grosse Pointe Real Estate, $44,018 for the sale of a building, $21,964 for "Joe Galasso's Bill," and $2,800 "to settle the forged check issue." (Id. at 7.) Aside from the $117,777 for his share in the former marital home, the Debtor is awarded a credit of $34,018 for the sale of a building.

Third, there is a section entitled "BANKRUPTCY ACKNOWLEDGMENT" that addresses the effect that a bankruptcy would have on the obligations of the Debtor and Ajemian under the Judgment of Divorce:

> IT IS FURTHER ORDERED AND ADJUDGED that [Ajemian] and [the Debtor] acknowledge that by assuming their individual share of the marital debts, that they have under this Judgment of Divorce, assumed all domestic obligations which are not dischargeable under the Bankruptcy Code 11 USC 1328(B)(5) [sic].[3]
>
> IT IS FURTHER ORDERED AND ADJUDGED that all monies each respective party may owe the other pursuant to the property settlement and the hold harmless provisions of this Judgment of Divorce shall be non-dischargeable in bankruptcy.
>
> IT IS FURTHER ORDERED AND ADJUDGED that should either party herein file bankruptcy and it is determined that the monies said bankruptcy debtor may owe to the other party herein, pursuant to the within property settlement and hold harmless obligations, is dischargeable in bankruptcy, then said monies to the full extent owed the other party, shall be automatically converted to non-dischargeable spousal support payable to the other party.
>
> IT IS FURTHER ORDERED AND ADJUDGED that this provision is independent of, and not limited or affected by, the spousal support provision previously set forth in this Judgment of Divorce.

(Id. at 12.)

The award to Ajemian appears in the section entitled "ALIMONY/SPOUSAL SUPPORT" and is referred to in that section as "alimony." Although, under Fitzgerald, the Judgment of Divorce's

---

[3] There is no such provision in the Bankruptcy Code.

award of "alimony" is entitled to deference, Sorah teaches that the label is but one of the "traditional indicia" of support. In re Sorah, 163 F.3d at 401. Under the second Sorah factor, the payments due Ajemian from the Debtor are to be made directly to Ajemian. This also is an indication of an award of support. On the other hand, the obligation on its face is not contingent upon such events as death, remarriage, or eligibility for Social Security benefits. Instead, the Debtor must make the monthly payments to Ajemian for the entire sixty month term, regardless of Ajemian's needs and even if she should die or remarry. This third Sorah factor suggests a property settlement and not support.

Because all three of the Sorah factors are not present in this case, the Court cannot conclusively presume that the Debtor and Ajemian intended to create an award of support. However, the Court may resort to other indicia as the three factors in Sorah are not exclusive. See McNamara v. McNamara (In re McNamara), 275 B.R. 832, 837 (E.D. Mich. 2002) ("The Sorah court stated explicitly that lower courts need not limit their analyses to consideration of the three indicia discussed above, but may also consider other factors.") (citing Sorah, 163 F.3d at 410). One such factor is the tax consequences of payments under a judgment of divorce. Under § 71(a) of the Internal Revenue Code, "[g]ross income includes amounts received as alimony or separate support payments." 26 U.S.C. § 71(a). An individual responsible for alimony payments is allowed a deduction for those payments. See id. § 215(a). In this case, the Judgment provides that there are no tax consequences to either party. In other words, the payments are not to be viewed as income to Ajemian or deductible by the Debtor. Because no income taxes are being paid by Arjemian and no deduction can be taken by the Debtor, the award to Ajemian appears more like a property settlement than alimony or support.

Another relevant factor here is the statement in the Judgment that the payments to Ajemian

-10-

are non-modifiable.

> If the alimony is either a lump sum or a definite sum to be paid in installments, the alimony provision is classified as alimony in gross. This term is somewhat misleading, because alimony in gross is not really alimony intended for the maintenance of a spouse, but rather is in the nature of a division of property. Accordingly, alimony in gross is considered nonmodifiable and exempt from modification under [Mich. Comp. Laws Ann. § 552.28], though the recipient spouse dies or remarries before all the payments are made.

Staple v. Staple, 616 N.W.2d 219, 222 (Mich. Ct. App. 2000) (citations omitted). The nonmodifiability of the award in this case and the fact that it is a definite sum to be paid in installments over a set term are indications that it is alimony in gross and therefore attributes of a division of property.

Finally, the definite sum that was awarded is itself revealing as to its true nature. First, the supposed spousal support obligations to be paid by the Debtor to Ajemian total $146,181.04. Second, the amount due Ajemian under the "PROPERTY SETTLEMENT" section, after applying the credits to both parties, is exactly $146,181.04. It simply is no coincidence that the "alimony" award is the precise amount of the net of the debits and credits set forth in the "PROPERTY SETTLEMENT" section of the Judgment. It appears that the arbitrator took the debits and credits under the "PROPERTY SETTLEMENT," netted them out, and then took the net balance of the obligation, consisting of $146,181.04, and called it nonmodifiable "support."

Another factor to consider is the section of the Judgment entitled "BANKRUPTCY ACKNOWLEDGMENT." However, on close inspection, that section does not tend to show the Debtor's obligations to be either more or less in the nature of alimony or support. First, that section applies on its face to all of the obligations of the Debtor under the Judgment. It is not limited to the Debtor's monthly payment obligations to Ajemian. Even those obligations of the Debtor that the

-11-

Judgment labels as "PROPERTY SETTLEMENT" are purported to be made non-dischargeable under this section. Second, this "BANKRUPTCY ACKNOWLEDGMENT" section also purports to make non-dischargeable all of Ajemian's obligations to the Debtor under the Judgment, even though the Judgment expressly provides that the Debtor "is not entitled to any alimony/spousal support from [Ajemian] and that said alimony/spousal support from [Ajemian] to [the Debtor] is hereby forever barred." (Compl., Ex. A at 2-3.) If this "BANKRUPTCY ACKNOWLEDGMENT" were enforced according to its terms, then in the event that Ajemian filed bankruptcy, all of her "PROPERTY SETTLEMENT" obligations to the Debtor would be rendered non-dischargeable. Finally, the "BANKRUPTCY ACKNOWLEDGMENT" section seems to recognize the possibility that a bankruptcy court might find some or all of the obligations of either the Debtor or Ajemian to be dischargeable but attempts to preemptively overrule any such determination by "automatically converting" such dischargeable obligations to non-dischargeable obligations. There is no authority to permit such "automatic conversion" and, conceptually, it appears to violate both §§ 523 and 727 of the Bankruptcy Code. In short, the attempt by the "BANKRUPTCY ACKNOWLDGEMENT" to indiscriminately make all obligations of both the Debtor and Ajemian non-dischargeable does not in any way override this Court's application of the Sorah factors or otherwise help Ajemian.

The Sorah court used the "looks like a duck, walks like a duck, and quacks like a duck" analogy. In re Sorah, 163 F.3d at 401 ("In determining whether an award is actually support, the bankruptcy court should first consider whether it 'quacks' like support."). The analogy applies in this case. Even though the obligation in this case bears the label of "ALIMONY/SPOUSAL SUPPORT," and, as a federal court, this Court is ordinarily reluctant to depart from the label used in a state court judgment, that label is not entitled to a conclusively presumptive effect unless the award also bears

the indicia of support. Sorah, 163 F.3d at 401. After applying the three factors identified in Sorah, and examining the traditional indicia of support, the Court concludes that the Debtor's obligation in the Judgment to pay Ajemian $146,184.04 is a property settlement and is not in the nature of alimony or support. Therefore, the Court will deny Ajemian's motion for summary judgment and grant the Debtor's motion for summary judgment. The Court will enter a judgment consistent with this opinion.

Because this is not a § 523(a)(5) obligation, it cannot be rendered non-dischargeable under that section. However, that leaves open the question of whether, as claimed in Ajemian's counter-complaint, it is a non-dischargeable obligation under § 523(a)(15). The Court will set that matter for an initial scheduling conference and proceed accordingly.

FOR PUBLICATION

**Entered: March 14, 2006**

              **/s/ Phillip J. Shefferly**
              **Phillip J. Shefferly**
              **United States Bankruptcy Judge**

-13-

05-05863-pjs    Doc 21    Filed 03/14/06    Entered 03/14/06 09:59:12    Page 13 of 13